# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | |
| HENRY POULIOT | : | Civil Action No. |
| | : | 1:08-CR-1-HL |
| Defendant. | : | |

# ORDER

Before the Court is the Government's Motion for Revocation of Release Order (Doc. 17). For the following reasons, the Government's Motion is denied.

## I. FACTS

The Government filed a Criminal Complaint against Defendant Henry Pouliot on December 14, 2007, charging that Defendant committed the offense of conspiracy to manufacture marijuana. On January 2, 2008, a detention hearing was held before Magistrate Judge Richard L. Hodge in Albany, Georgia. At the hearing, which was also a preliminary examination, one witness testified for the Government and four witnesses testified for Defendant. The witness who testified on behalf of the Government was Donald Steven Enfinger, a DEA Task Force Agent. The substance of Agent Enfinger's testimony against Defendant was that Defendant associated with several individuals who were involved in an indoor marijuana cultivation ring, Defendant's fingerprint was discovered on one of the grow

1

lamps that was seized when a search warrant was executed on the home of Codefendant Weyman Harris, and a confidential informant had informed law enforcement officials that Defendant was involved in marijuana cultivation.

Testifying for Defendant were Tan Pouliot, Gary Mitchell Clemmons, Kevin William Kelly, and Carlos Alberto Yipp. Tan Pouliot, who is Defendant's mother, testified that she and her son moved to the Albany, Georgia in 1992 and have resided there until the present time. She testified that Defendant was currently unemployed, but he used to work as an automobile technician at Albany Honda. According to Ms. Pouliot, Defendant quit his job at Albany Honda when his marriage ended because the divorce caused him to suffer depression. She also testified that Defendant could reside with her if he was granted bond, and it was her belief that he would not flee or pose a danger to the community.

Gary Clemmons, the service manager at Albany Honda, was the next witness to testify for Defendant. Clemmons testified that he worked with Defendant at Albany Honda from April, 1999 until about April, 2006. He testified that he knew Defendant very well, and Defendant was one of his best technicians. Clemmons further testified that Defendant would be unlikely to flee the jurisdiction because of the love for his son, that Defendant did not pose a danger to the community, and that he would rehire Defendant if he was released on bond.

Kevin Kelley then testified for Defendant. Ten years ago Kelley worked with Defendant for approximately one year at the Doublegate Country Club in Albany, Georgia. At the time, Defendant was eighteen years old and Kelley was a tennis pro at the club.

Kelley testified that Defendant was an honest and dependable employee who was very mechanically inclined. Since their employment relationship ended approximately ten years ago, Kelley has maintained sporadic contact with Defendant. He also testified that he did not believe Defendant would flee the jurisdiction or that Defendant would pose a danger to the community. Though Kelley testified that he was unaware that Defendant pled guilty in 1999 to selling ecstacy in Dougherty County, Georgia, he continued to maintain that Defendant would not pose a danger to the community if released.

The last witness to testify on Defendant's behalf was Carlos Yipp. Yipp testified that he has known Defendant for approximately nine or ten years, and Defendant was his best man at his wedding approximately three years ago. He testified that he and Defendant were friends, and Defendant occasionally used his mechanical abilities to help him with various odd jobs. According to Yipp, Defendant was very honest and dependable, and he did not pose a flight risk or a danger to the community. During cross-examination of Yipp, the Government elicited testimony from Yipp establishing that Yipp is acquainted with some of the alleged participants in the marijuana growing operation. Specifically, Yipp testified that after the arrest of Frank Spring, the main target in the investigation, he called an individual named Tim Mihalko at the request of Dean Slaymaker, an allege coconspirator of Spring and Pouliot's. The reason for the call was to find someone to take care of Spring's dog while Spring was in jail. In addition, Yipp testified that his wife is best friends with Chucky Payne. According to the Government, Payne is another coconspirator in the marijuana growing operation.

At the conclusion of the hearing, Judge Hodge denied the Government's Motion for Pretrial Detention and authorized Defendant's release upon the execution of a bond in favor of the Government for $15,000, which was to be secured by a cash deposit of ten percent of that amount. Defendant's release was also subject to certain conditions. Among other things, Defendant was required to: (1) actively seek and maintain legal employment; (2) keep his probation officer, his attorney, and the Office of the United States Attorney informed of any changes in his telephone number or address; (3) appear at all proceedings as required; (4) obtain the permission of his probation officer before traveling outside the Middle District of Georgia; (5) undergo random drug screenings; and (6) avoid contact with specified individuals who were allegedly involved in the marijuana growing operation. Judge Hodge reasoned that a release on conditions, rather than detention, was appropriate because Defendant had a good employment history, strong ties to the community, and he successfuly completed his probation for a prior drug offense. On January, 16, 2008, the Government filed this Motion for Revocation of Release Order.

## II. DISCUSSION

There are four categories of release or detention: (1) release on personal recognizance or unsecured appearance bond; (2) release on conditions; (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a). Detention is required when the judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. A finding that the defendant is

either a flight risk or a danger to the community is sufficient to detain the person pending trial. United States v. King, 849 F.2d 485, 488 (11th Cir. 1988). The Government must prove flight risk by a preponderance of the evidence, and it must prove that the defendant is a danger to the community by clear and convincing evidence. Id. at 488-89. The judicial officer should consider four factors in determining whether the defendant poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). If the judicial officer determines that there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is provided in the Controlled Substances Act, a rebuttable presumption arises that the defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e). This statutory presumption only imposes the burden of production on the defendant; the burden of persuasion remains with the Government. King, 849 F.2d at 488. A district court's review of a magistrate judge's release order is de novo.

Here, there is probable cause to believe that Defendant committed an offense for which a maximum term of imprisonment of ten years or more is provided in the Controlled Substances Act. Thus, a rebuttable presumption exists that Defendant is a flight risk and a danger to the community. Applying the statutory factors to the facts of this case, this Court finds that Defendant has produced evidence to rebut this presumption, and the Government

5

has not proved by a preponderance of the evidence that Defendant is a flight risk, nor has it proved by clear and convincing evidence that he is a danger to the community. First, the nature and circumstances of the offense charged are that Defendant was allegedly involved in a marijuana growing operation. This factor weighs in favor of detention. See 18 U.S.C. § 3142(g)(1) (stating that the judicial officer should consider whether the defendant has been charged with an offense that involves a controlled substance).

The second factor is the weight of evidence against the person. As the magistrate judge noted during the detention hearing, though there is probable cause that Defendant committed the offense charged, the Government's evidence is not strong. This Court agrees. The evidence of Defendant's involvement in the marijuana growing operation consists of Defendant's fingerprint on a grow light, testimony from a confidential informant that Defendant was involved in marijuana cultivation, and the fact that Defendant associated with some of the individuals allegedly involved in the growing operation. Due to the lack of strong evidence, this Court concludes that this factor weighs against detention.

The third factor is the history and characteristics of the person. This includes:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial sentencing, appeal, or

completion of sentence of an offense under Federal, State, or local law.

18 U.S.C. § 3142(g). In this case, evidence at the detention hearing established that Defendant suffered from depression after he and his wife divorced. This depression led Defendant to quit a good paying job. Defendant also has a prior conviction for the sale of ecstacy. Nonetheless, on balance, this Court finds that this factor weighs against detention. Defendant has strongly family ties to the community. All family members live in the Albany area except for his sister. Defendant and his mother have both resided in Albany for approximately sixteen years, and Defendant will reside with his mother if released on bond. His son also lives in the area. Though he quit his job when he was going through the divorce with his wife, Defendant has a strong employment background. Testimony presented at the detention hearing establishes that Defendant is a talented, honest, and dependable employee. Further, Mr. Clements, the service manager at Albany Honda, asserted that he would rehire Defendant at the dealership if he is released on bond. Defendant has no assets. As a result, he does not have the means to finance an escape from the jurisdiction. Also, Defendant's record of appearance at court proceedings is good. He successfully completed his probation for his prior conviction for the sale of ecstacy. For these reasons, this factor weighs against detention.

The last factor is the nature and seriousness of the danger to any person or the community that would be posed by the person's release. The concept of defendant dangerousness under the statute is not limited to the danger of harm involving physical violence. King, 849 F.2d at 487 n.2. As the term is used in the statute, dangerousness

encompasses the risk that the defendant might engage in criminal activity to the detriment of the community, such as continuing to engage in drug trafficking. Id. In spite of this broad definition of dangerousness, this Court must determine the type of danger that would be posed by Defendant's release when considering this factor. For example, it is axiomatic that a person who is an alleged terrorist leader poses a danger to the community that is far more serious than the danger posed by an individual charged with growing marijuana. This is not to discount the seriousness of the danger that is posed by those that manufacture drugs, but the statutory language directs this Court to consider the "nature and seriousness of the danger." In considering the facts of this case, this Court concludes that Defendant would not pose a serious danger to any person or the community. The testimony elicited at the detention hearing satisfies this Court that it is not likely that Defendant will participate in the manufacture or distribution of illegal drugs. As a result, based on the nature of the offense charged and the unlikelihood that Defendant will continue to participate in the alleged illegal conduct, this Court finds that this factor weighs against detention.[1]

## III. CONCLUSION

Based on the consideration of the statutory factors listed at 18 U.S.C. § 3142(g), as applied to the evidence presented at the detention hearing conducted before Magistrate Judge

---

[1] This Court wants to reemphasize that it does not take lightly the risk posed by the manufacture of drugs. This Court's decision on this factor is based on the likelihood that Defendant will not participate in illegal activity if released on bond. This low risk of re-offense, combined with the nature and imminence of the danger that would be posed by Defendant's re-offense is what compels this Court's conclusion. If this Court concluded that Defendant would likely revert to the manufacture of marijuana, as alleged by the Government, this Court would most certainly find that Defendant posed a serious danger to the community.

Hodge, this Court concludes that the Government has not proved by a preponderance of the evidence that Defendant is a flight risk, nor has it proved by clear and convincing evidence that he is a danger to the community. As a result, Magistrate Judge Hodge's release order is affirmed.

**SO ORDERED**, this the 17th day of March, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, JUDGE**

dhc